**FILED**



*3:36 pm, 9/27/21*

**Margaret Botkins**
**Clerk of Court**

Michael LaGarde, CO Bar #50124 (*Pro Hac Vice* Pending)
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Denver Field Office
950 17th Street, Suite 300
Denver, CO 80202
Telephone: 303-866-1300
Email: michael.lagarde@eeoc.gov
(*Pro Hac Vice Motion Pending*)

L. Robert Murray
Acting United States Attorney
C. Levi Martin, Bar # 6-3781
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82004-0668
Telephone: (307) 772-2124
Email: christopher.martin@doj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION, )
                   )
          Plaintiff, )
                   )
      v. )
                   )
                   )
SKILS'KIN )
                   )
          Defendant. )
                   )

CIVIL ACTION NO.     21-CV-185-NDF

## COMPLAINT

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of race and retaliation, and to provide appropriate relief to Bryan Wheels. As alleged with greater particularity below, the Equal Employment Opportunity Commission alleges that Defendant Skils'kin discriminated against Bryan Wheels, an African American employee, in violation of Title VII by subjecting him to severe and pervasive racial harassment for months. The EEOC also alleges that Skils'kin failed to take appropriate corrective action when Wheels complained to managers and supervisors about his coworkers' offensive racial comments and use of racial slurs including but not limited to "nigger," "monkey," and "jungle bunny." The EEOC further alleges that Mr. Wheels was subsequently discharged both because of his race and in retaliation for months of repeated complaints, while a white employee with far less seniority was retained.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed, and may be ongoing, within the jurisdiction of the United States District Court for the District of Wyoming.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), is the agency of the United States of America charged with the administration, interpretation and

enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.      At all relevant times, Defendant Skils'kin, a Washington corporation, has continuously been doing business in the State of Wyoming, and has continuously had at least 15 employees.

5.      At all relevant times, Skils'kin has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6.      More than thirty days prior to the institution of this lawsuit, Bryan Wheels filed a charge with the EEOC alleging Skils'kin violated Title VII.

7.      On February 12, 2021, the EEOC issued to Skils'kin a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Skils'kin to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8.      On July 26, 2021, the EEOC issued a letter advising Skils'kin that the EEOC had determined the parties were unable to reach a conciliation agreement acceptable to the EEOC.

9.      All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

10.      Since at least 2015, Skils'kin has engaged in unlawful employment practices in violation of Sections 703 and 704 of Title VII, 42 U.S.C. § 2000e-2 and 42 U.S.C. § 2000e-3.

11.     On September 3, 2015, Bryan Wheels was hired by Skils'kin to work on its grounds crew at Warren Air Force Base.

12.     On November 1, 2015, Wheels and another grounds crew employee, Thomas Johnson, were transferred from the seasonal grounds crew to the dining hall.

13.     While working in the dining hall, Wheels heard Johnson make several comments about white supremacy, the Ku Klux Klan, and the SS in Nazi Germany.

14.     While working in the dining hall, Wheels complained to an assistant manager about Johnson's offensive racial comments.

15.     Skils'Kin did not take any disciplinary action against Johnson based on the offensive racial comments he made while working in the dining hall.

16.     On May 1, 2016, Johnson was transferred back to the grounds crew.

17.     The next year, on or around May 1, 2017, Wheels was transferred back to the grounds crew.

18.     The first week Wheels worked on the grounds crew in May 2017, he received a call from Johnson who said that he and Supervisor Wayne Fernandez considered Wheels to be a "token hire."

19.     A day or two later, Wheels received a second call from Johnson who said he and Fernandez had said to each other that Wheels was going to be their "bitch" for the season.

20.     After these calls with Johnson, Wheels complained to Project Manager Jesus Fresquez about Johnson's offensive comments.

21.     After Wheels complained, Fresquez told Johnson not to call Wheels a token, but Skils'kin did not take any other action to address Johnson's comments.

22.     The next week, Fresquez informed Wheels that he would be assigned to work on a two-man team with Johnson, under the supervision of Fernandez.

23.     When Fresquez informed Wheels of this assignment, Wheels objected.

24.     Fresquez responded to Wheels's objection by saying Wheels could "handle it" and that no one else wanted to work with Johnson.

25.     Later in May 2017, after being placed on a team with Wheels, Johnson told a group of Skils'kin employees that you cannot call Wheels a "nigger" or you will get in trouble.

26.     Wheels and a coworker reported Johnson's use of a racial slur to Fernandez immediately after it happened.

27.     Fernandez told Wheels and the coworker that he would bring their complaints to Fresquez.

28.     Fresquez then came to speak with Wheels out in the field, away from the office.

29.     Wheels felt this was unusual because meetings typically did not occur out in the field, away from the office.

30.     During their conversation, Fresquez told Wheels to stop making complaints about Johnson's offensive racial comments.

31.     During their conversation, Fresquez told Wheels to not tell anyone else about the offensive racial incidents with Johnson.

32.     Skils'kin did not take any disciplinary action against Johnson for his use of the word "nigger" in May 2017.

33.     Sometime between May and December 2017, Johnson referred to Wheels as a "jungle bunny" in front of other employees, including Fernandez, in the employee breakroom.

34.     From May to December 2017, Johnson continued to repeatedly make offensive racial comments while working on the grounds crew for Skils'kin.

35.     From May to December 2017, Johnson was not disciplined for making offensive racial comments while working on the grounds crew for Skils'kin.

36.     At some point while Wheels was working on the grounds crew in 2017, another Skils'kin grounds crew employee referred to Wheels as a "monkey" in the presence of Fernandez.

37.     Fernandez told the employee not to refer to Wheels as a monkey, but Fernandez did not take any other action to address the offensive comment.

38.     The employee continued to refer to Wheels as a monkey after being told not to.

39.     While Wheels worked on the grounds crew in 2017, Fernandez used the term "nigger" in front of Wheels.

40.     When another employee chastised Fernandez for using this term, Fernandez responded that they didn't have to worry because Wheels did not care and would not say anything.

41.     Skils'kin did not discipline Fernandez for making offensive racial comments while working as a grounds crew supervisor.

42.     While Wheels worked on the grounds crew in 2017, grounds crew employee Rich Apodaca called Wheels a "nigger" to other employees.

43.     While Wheels worked on the grounds crew in 2017, Wheels overheard Apodaca repeat multiple times the purported joke that the N.B.A. stands for "Nigger Boy Association," not the National Basketball Association.

44.     While Wheels worked on the grounds crew in 2017, a coworker warned Wheels that Apodaca had made comments to the effect that all blacks should be killed.

45.     While Wheels worked on the grounds crew in 2017, Wheels made multiple complaints to supervisors about Apodaca's offensive racial comments.

46.     Skils'kin did not discipline Apodaca for making offensive racial comments while working on the grounds crew in 2017.

47.     While on the grounds crew in 2017, Wheels complained to Skils'kin supervisors and managers about offensive racial comments made by coworkers on multiple occasions, including complaints made in November 2017.

48.     Skils'kin uses a seniority system to select which seasonal grounds crew employees are retained for year-round positions at the beginning of each winter season.

49.     In December 2017, a Skils'kin supervisor told Wheels that, based on his seniority, Wheels was the seasonal employee next in line to be retained in a year-round position.

50.     In December 2017, Wheels was trained on how to perform winter tasks that were the responsibilities of employees in year-round positions.

51.     On December 22, 2017, Skils'kin laid Wheels off from his grounds crew job at Skils'kin.

52.     When Wheels was laid off, Skils'kin management told Wheels he was only laid off because it was the end of the season for seasonal employees, and he was eligible to be recalled to a seasonal job in the Spring.

53.     When Wheels was laid off, he was eligible for recall to his grounds crew position.

54.    In December 2017, Skils'kin retained a seasonal grounds crew worker, Clifford Wise, in a year-round position.

55.    Wise had less seniority than Wheels.

56.    Wise is white.

57.    After Wheels was informed he was being laid off from the grounds crew, Wheels requested transfer to a job in the dining hall.

58.    Wheels was denied transfer to a job in the dining hall.

59.    Skils'kin regularly recalled seasonal grounds workers to return to their former positions in the spring of each year.

60.    Skils'kin did not recall Wheels to any position in the Spring of 2018.

61.    Throughout his employment with Skils'kin, Wheels was the only African American employed by Skils'kin at Warren Air Force Base.

62.    Throughout his employment with Skils'kin, Wheels received no disciplinary actions for his conduct or work performance.

## FIRST CLAIM FOR RELIEF
### Hostile Work Environment – 42 U.S.C. § 2000e-2(a)

63.    The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

64.    Skils'kin discriminated against Wheels in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by harassing Wheels and creating a hostile work environment because of his race, African American.

65.    The offensive conduct described in the preceding paragraphs was sufficiently severe or pervasive to alter the terms and conditions of employment for Wheels.

66.     The actions of Wheels's direct supervisor Fernandez created and/or contributed a hostile work environment based on race, including but not limited to:

    A. Communicating with Johnson that they considered Wheels to be a "token hire."

    B. Communicating with Johnson that they were going to make Wheels their "bitch."

    C. Using the term "nigger" in front of Wheels.

    D. Stating to Wheels and other employees that they didn't have to worry about making offensive racial comments because Wheels did not care and would not say anything.

    E. Failing to discipline Johnson and other employees under his supervision for making offensive racial comments.

67.     The actions of Wheel's second-level manager Fresquez created and/or contributed to a hostile work environment based on race, including but not limited to:

    A. Placing Wheels on a two-man team with Johnson, under the supervision of Fernandez, the very next week after Wheels complained about their offensive racial comments.

    B. Telling Wheels to stop making complaints about Johnson's offensive racial comments.

    C. Failing to discipline Johnson and other employees under his supervision for making offensive racial comments.

68.     Skils'kin knew of, or in the exercise of reasonable care should have known of, the hostile or offensive work environment suffered by Wheels because of his race.

69.     Wheels repeatedly complained to management about the hostile or offensive work environment.

70.     Skils'kin failed to take reasonable measures to prevent and promptly correct racially discriminatory and harassing behavior in the workplace.

71.     The effect of the practices complained of in the foregoing paragraphs has been to deprive Wheels of equal employment opportunities and otherwise adversely affect his status as an employee because of his race.

72.     The effect of the practices complained of in the paragraphs above has been to cause Wheels emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, and to deprive him of the financial and other benefits of working for Skils'kin.

73.     The unlawful employment practices complained of in the forgoing paragraphs were intentional.

74.     The unlawful employment practices complained of in the forgoing paragraphs were done with malice or with reckless indifference to Wheels's federally protected rights.

## SECOND CLAIM FOR RELIEF
### Discharge – 42 U.S.C. §§ 2000e-2(a)

75.     The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

76.     Skils'kin discharged Wheels in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

77.     Skils'kin discharged Wheels because of his race, African American.

78.     Wheels's supervisors at Skils'kin took no disciplinary action to address the rampant use of offensive racial comments on the grounds crew, despite months of complaints made by Wheels.

79.     At the time of his discharge, Wheels was the only black Skils'kin employee on the grounds crew.

80.     At the time of Wheels's discharge, Skils'kin retained a white grounds crew employee with less seniority than Wheels, contrary to its established seniority system.

81.     The effect of the practices complained of in the foregoing paragraphs has been to deprive Wheels of equal employment opportunities and otherwise adversely affect his status as an employee because of his race.

82.     The effect of the practices complained of in the paragraphs above has been to cause Wheels emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, and to deprive him of the financial and other benefits of working for Skils'kin.

83.     The unlawful employment practices complained of in the forgoing paragraphs were intentional.

84.     The unlawful employment practices complained of in the forgoing paragraphs were done with malice or with reckless indifference to Wheels's federally protected rights.

**THIRD CLAIM FOR RELIEF**
**Retaliation – 42 U.S.C. § 2000e-3(a)**

85.     The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

86.     Skils'kin unlawfully retaliated against Wheels in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by discriminating against him for opposing unlawful employment practices, including racial harassment.

87.     By making complaints of race discrimination, Wheels engaged in protected conduct under Section 704(a) of Title VII. 42 U.S.C. § 2000e-3(a).

88.     Skills'kin took adverse actions against Wheels shortly after he complained about racial harassment and discrimination.

89.     The adverse actions included the following:

A. The week after Wheels complained about racial harassment by Johnson and Fernandez, Skills'kin assigned Wheels to work on a team with Johnson, under the supervision of Fernandez.

B.  Skills'kin laid off Wheels in December 2017, after Wheels had complained of racial discrimination as recently as November 2017.

C.  Skills'kin denied Wheels request for a transfer in December 2017, when Wheels had complained of racial discrimination as recently as November 2017.

D.  Skills'kin effectively discharged Wheels in Spring of 2018 when it failed to recall him from layoff, even though Wheels had a good employment record, no disciplinary actions, and was laid off with eligible-for-rehire status.

90.     The effect of the practices complained of in the foregoing paragraphs has been to deprive Wheels of equal employment opportunities and otherwise adversely affect his status as an employee because of he engaged in protected activity.

91.     The effect of the practices complained of in the paragraphs above has been to cause Wheels emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, and to deprive him of the financial and other benefits of working for Skils'kin.

92.     The unlawful employment practices complained of in the forgoing paragraphs were intentional.

93.     The unlawful employment practices complained of in the forgoing paragraphs were done with malice or with reckless indifference to Wheels's federally protected rights.

## **PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant Skils'kin, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of race, including racial harassment, and from retaliating against employees who oppose such unlawful employment practices.

B.     Order Defendant Skil'skin to institute and carry out policies, practices, and programs which provide equal employment opportunities for African-American employees and for individuals who oppose unlawful employment practices, and which eradicate the effects of its past and present unlawful employment practices, including racial discrimination, racial harassment, and retaliation.

C.     Order Defendant Skils'kin to make Wheels whole, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.      Order Defendant Skils'kin to make Wheels whole by providing compensation for any past and/or future pecuniary losses resulting from the unlawful employment practices described in the foregoing paragraphs above, including but not limited job search expenses, in amounts to be determined at trial.

E.      Order Defendant Skils'kin to make Wheels whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described in the foregoing paragraphs above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and stress, in amounts to be determined at trial.

F.      Order Defendant Skils'kin to pay Wheels punitive damages for acting with malice or reckless indifference to Wheel's federally protected rights, as described in the foregoing paragraphs above, in amounts to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper in the public interest.

H.      Award the EEOC its costs of this action.

DATED: September 27, 2021

                                        L. ROBERT MURRAY
                                        Acting United States Attorney

                                        C. LEVI MARTIN
                                        Assistant United States Attorney